CMS

COVER LETTER

Timothy Wayne Guess
Federal Correctional Complex, Low
P.O. Box 1000
Petersburg, Virginia 23804
Date: 01/13/2026

Clerk of Court
United States Court of Appeals
for the Fourth Circuit
1100 East Main Street, Suite 501
Richmond, Virginia 23219

Re: In re Timothy Wayne Guess
Motion for Authorization to File a Second or Successive §2255
Related Appeal No. 20-6095

Dear Clerk of Court:

Please find enclosed for filing a Motion for Authorization to File a Second or Successive Motion under 28 U.S.C. §2255, pursuant to 28 U.S.C. §2244(b)(3).

The motion seeks authorization to file a §2255 motion in the United States District Court for the Eastern District of Virginia, Criminal No. 2:10-cr-00140-MSD-TEM, and relates to a sentencing-stage constitutional claim not previously adjudicated on the merits.

This submission is made pro se. I respectfully request that the motion be docketed and presented to the Court in the ordinary course.

Thank you for your attention to this matter.

Respectfully submitted,

Timothy Wayne Guess
Pro Se

RECEIVED

JAN 1 5 2026

U.S. Court of Appeals
Fourth Circuit

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

In re:
TIMOTHY WAYNE GUESS,
Movant.

MOTION FOR AUTHORIZATION TO FILE A SECOND OR SUCCESSIVE MOTION UNDER 28 U.S.C. § 2255 PURSUANT TO
28 U.S.C. § 2244(b)(3)

RELATED APPEAL: No. 20-6095

## I. INTRODUCTION
Movant Timothy Wayne Guess respectfully moves for authorization under 28 U.S.C. § 2244(b)(3) to file a second or successive
motion under 28 U.S.C. § 2255 in the Eastern District of Virginia.

The proposed §2255 motion challenges a constitutional sentencing defect that continues to affect the length of Movant's
imprisonment in United States v. Guess, No. 2:10-cr-00140-MSD-TEM (E.D. Va.).

The claim is based on:
1. The sentencing transcripts, which show that the obstruction-of-justice enhancement under U.S.S.G. §3C1.1 was imposed
through an impermissible shift of the burden of proof, where the court treated the absence of defense evidence as proof of
obstruction despite impeachment of government witnesses; and
2. A later sealed AO-247 order entered in a §3582(c)(2) proceeding, which expressly relied on "prior efforts to obstruct justice"
to deny a greater sentence reduction and to maintain a sentence above the amended guideline range, thereby continuing the
effect of the challenged enhancement. Movant did not receive that sealed order until after the appeal in No. 20-6095 was
denied.

Movant previously filed a §2255 motion approximately thirteen years ago. Authorization is therefore required.

## II. JURISDICTION
This Court has jurisdiction to consider this motion under 28 U.S.C. §2244(b)(3)(A).

## III. RELEVANT PROCEDURAL BACKGROUND
1. Movant was convicted after a jury trial in the Eastern District of Virginia.
2. At trial, certain witnesses testified that they overheard Movant discussing the murder of witnesses.
3. Defense counsel impeached those witnesses on cross-examination, exposing bias and motive.
4. The jury made no finding that obstruction of justice occurred.
5. At sentencing, the district court imposed an obstruction-of-justice enhancement under U.S.S.G. §3C1.1.
6. As reflected in the sentencing transcripts, the court acknowledged that the witnesses had biases and that the jury could have
rejected their testimony, but concluded the enhancement was established because the defense presented no contradictory
evidence.
7. Movant filed a §2255 motion approximately thirteen years ago.
8. Years later, in a §3582(c)(2) proceeding, the district court issued a sealed AO-247 order granting only a limited reduction,
checking that the sentence remained above the amended guideline range, and stating that a greater reduction was not
appropriate due to "the nature of [Movant's] prior efforts to obstruct justice."
9. Movant did not receive the sealed AO-247 order until after the Fourth Circuit denied the appeal in No. 20-6095, preventing
timely litigation of the rationale relied upon.

## IV. SUMMARY OF THE PROPOSED §2255 CLAIMS
A. Due Process   Impermissible Burden Shifting at Sentencing

The sentencing transcripts show that the district court treated the absence of defense evidence as proof supporting the
obstruction enhancement, despite impeachment of the government's witnesses.

Fourth Circuit law is clear that:

The government bears the burden of proving sentencing enhancements by a preponderance of the evidence;

The burden never shifts to the defendant;

A defendant may rely entirely on cross-examination and impeachment.

See United States v. Kiulin, 360 F.3d 456, 461 (4th Cir. 2004); United States v. Powell, 650 F.3d 388, 392 93 (4th Cir. 2011).

Treating the absence of defense evidence as proof constitutes impermissible burden shifting and violates due process.

B. Continued Reliance on the Defective Enhancement in a Sealed §3582(c)(2) Disposition

The sealed AO-247 order expressly relied on "prior efforts to obstruct justice" to deny a greater reduction and to maintain a sentence above the amended guideline range. Because that order was sealed and not provided to Movant until after appellate review concluded, Movant was deprived of a meaningful opportunity to challenge the factual predicate used to limit relief.

The obstruction enhancement is therefore not merely historical; it remains operative and outcome-determinative, continuing the constitutional defect.

V. SECOND-OR-SUCCESSIVE POSTURE
Movant acknowledges that he previously filed a §2255 motion and therefore seeks authorization under §2244(b)(3).

In the alternative, Movant requests a determination that the proposed §2255 motion is not second or successive because it challenges a later sentence-modification disposition that continues to set the operative term of imprisonment.

VI. REQUEST FOR REASSIGNMENT ON REMAND
If authorization is granted and relief is ultimately awarded, Movant respectfully requests that any remand be assigned to a different district judge.

The Fourth Circuit may order reassignment where:
1. The original judge has already resolved disputed factual issues;
2. Further proceedings would require revisiting entrenched credibility determinations; and
3. Reassignment is necessary to preserve the appearance of justice without disproportionate waste.
See United States v. Nicholson, 611 F.3d 191, 217 (4th Cir. 2010); United States v. McCall, 934 F.3d 380, 389 (4th Cir. 2019).

VII. CONCLUSION
Movant presents a non-frivolous constitutional sentencing claim grounded in the sentencing transcripts and a later sealed sentence-modification disposition that continues to affect the length of his imprisonment. Because the claim was not previously adjudicated on the merits and could not be timely litigated once the sealed order was withheld until after appeal, authorization under 28 U.S.C. §2244(b)(3) is warranted.

REQUEST FOR RELIEF
Movant respectfully requests that this Court:
1. Authorize the filing of the proposed §2255 motion in the Eastern District of Virginia; or, in the alternative,
2. Determine that the proposed §2255 motion is not second or successive; and
3. Direct that any remand proceedings be conducted before a different district judge.

Respectfully submitted,
Timothy Wayne Guuss
*Timothy Wayne Guuss* 06/13/2026

EXHIBIT LIST

Exhibit A - Sealed AO-247 Order

Order entered in connection with the §3582(c)(2) proceeding, reflecting the district court's reliance on "prior efforts to obstruct justice" as a basis for maintaining a sentence above the amended guideline range.

Exhibit B - Sentencing Transcript Excerpt

Relevant excerpt from the original sentencing transcript demonstrating the court's imposition of the obstruction-of-justice enhancement based on trial testimony, acknowledgment of witness impeachment and jury non-finding, and reliance on the absence of defense evidence.

AO 247 (Rev. 03/19)   Order Regarding Motion for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(2)          Page 2 of 2 (Page 2 Not for Public Disclosure)

**This page contains information that should not be filed in court unless under seal.**
*(Not for Public Disclosure)*

DEFENDANT:             Timothy Wayne Guess

CASE NUMBER:   2:10cr140

DISTRICT:        Eastern District of Virginia

## I. COURT DETERMINATION OF GUIDELINE RANGE *(Prior to Any Departures)*

| | | |
|---|---|---|
| Previous Total Offense Level: 26 | Amended Total Offense Level: 26 | |
| Criminal History Category: III | Criminal History Category: II (reduced) | |
| Previous Guideline Range: 78 to 97 months | Amended Guideline Range: 70 to 87 months | |

## II. SENTENCE RELATIVE TO THE AMENDED GUIDELINE RANGE

☐ The reduced sentence is within the amended guideline range.

☐ The previous term of imprisonment imposed was less than the guideline range applicable to the defendant at the time of sentencing as a result of a substantial assistance departure or Rule 35 reduction, and the reduced sentence is comparably less than the amended guideline range.

☑ The reduced sentence is above the amended guideline range.

## III. FACTORS CONSIDERED UNDER USSG § 1B1.10 AND 18 U.S.C. § 3553(a) *(See Chavez-Meza v. United States, 138 S.Ct. 1959 (2018))*

Defendant was originally sentenced to 460 months imprisonment, and his sentence was later reduced twice. It was first reduced to 280 months when his compassionate release motion was granted, ECF No. 191, and was later reduced to 256 months when his "Drugs Minus Two" motion was granted, ECF No. 205.

As reflected in the Guideline recalculation worksheet prepared by the Probation Office of this Court, ECF No. 206, Defendant is currently eligible for another reduction under 18 U.S.C. § 3582(c)(2). Removal of the two criminal history "status points" that Defendant was attributed at sentencing pursuant to retroactive Guideline Amendment 821 reduces Defendant's advisory Guideline range (on Counts 1-6, & 9) to 70-87 months, and were Defendant sentenced today, the mandatory minimum consecutive sentence on his two § 924(c) firearm counts (Counts 7 & 8) would total 120 months. Therefore, the "effective" Guideline range would be 190 to 207 months. The Government appears to acknowledge Defendant's eligibility for a reduced sentence, but offers no argument regarding the extent of the appropriate reduction. Defendant requests a reduced sentence of 190 months (a low-end Guideline sentence), but a reduction of this magnitude is not appropriate as Defendant's current sentence of 256 months represents a variance above the prior effective Guideline range, and the record continues to support an upward variance.

Based on the retroactive reduction to Defendant's effective Guideline range, Defendant's continued good behavior and rehabilitation while incarcerated, and the absence of any objection from the Government, the Court grants Defendant's motion and reduces his sentence to 240 months' imprisonment.\* This sentence consists of 120 months on each of Counts 1-6, and 9, all to run concurrently, 60 months consecutive on Count 7, and 60 months consecutive on Count 8. A greater reduction, as requested by Defendant, is not appropriate due to the seriousness of Defendant's criminal conduct as underscored by the nature of his prior efforts to obstruct justice. See ECF No. 205, at 6-9.

\* As reflected in Defendant's motion, ECF No. 208, at 4 n.6, Defendant has decided not to proceed on his pro se motion objecting to the Guidelines, ECF No. 207, and that motion is therefore dismissed without prejudice.

1          Let's address now the objection on the offense conduct

2    section of the PSR.  And just to clarify that, there's no

3    enhancement on role in the offense.  As I understand it your

4    objection is just to the fact that the presentence report has

5    the language about defendant's role?

6          MR. KIMBALL:  Right, Judge.  It's just that particular

7    paragraph, Judge, actually just kind of summarizes really the

8    offense conduct.  So to be consistent with my other objections I

9    also objected to that particular paragraph, Judge.

10         THE COURT:  All right.  And that's all based on the

11   theory that Mr. Guess pled not guilty?

12         MR. KIMBALL:  Pled not guilty, Judge.  And to be

13   consistent with that and for record purposes.  Obviously there

14   was a jury that heard this case, they obviously did not --

15   agreed with the government's theory and argument and disagreed

16   with ours, so we're sort of stuck with that verdict, but I still

17   have to put forth the objections, Judge, to be consistent and

18   for record purposes.

19         THE COURT:  Right.  That being the case, I don't know

20   that I really need to hear any more.  I don't know that I need

21   to hear any more from the government unless they feel the need

22   to address that.  Who is arguing this?

23         MR. COMSTOCK:  No further argument.

24         THE COURT:  Okay.  Were you thinking?

25         MR. COMSTOCK:  No, Your Honor.

THE COURT:  Well, Mr. Comstock, I shouldn't have put
you in that position, obviously.  You were thinking, but you
weren't thinking about that particular issue because you had
decided there was no need to further address it.

I think that under the circumstances that defendant,
under the United States v. Terry, 916 F.2d 157, notes that "A
mere objection to the finding in the presentence report is not
sufficient to raise the issue.  A defendant has an affirmative
duty to make a showing that the information in the presentence
report is unreliable and articulate the reasons why the facts
contained therein or untrue or inaccurate.  Without an
affirmative showing the information is inaccurate, the court is
free to adopt the findings of the presentence report without
more specific inquiry or explanation."

And since I haven't overturned the verdict of the jury
and they did find Mr. Guess guilty on all counts, and they would
have had to have concluded that each element of each offense was
satisfied by the government's proof, and I have no additional
information being presented to me, the court must find that
Mr. Guess has failed to articulate reasons why the facts
contained in the role in the offense -- or excuse me, the
offense conduct section of the presentence report is inaccurate
or untrue.  And so the objection is overruled.

We get to this next objection on the role in the
offense and we have the same issue, and there's no enhancement

1  there, and that's really where I meant to ask you about the

2  enhancement, Mr. Kimball.

3          You again, I take it, on the role -- just as the

4  offense conduct section of the PSR and the role in the offense,

5  you're objecting to what's contained there because of the fact

6  that Mr. Guess pled not guilty and you want to preserve that

7  issue.  Is my understanding correct?

8          MR. KIMBALL:  It is, Judge.  But I do note for the

9  obstruction of justice there was an actual two-level

10 enhancement.

11         THE COURT:  We're not there yet.

12         MR. KIMBALL:  I'm sorry.

13         THE COURT:  I'm just on the role in the offense.

14         MR. KIMBALL:  I'm sorry, Judge, I'm jumping a head.

15         THE COURT:  But in the offense, role of offense, have

16 I stated that correctly?

17         MR. KIMBALL:  Yes you have, Your Honor.

18         THE COURT:  For the same reasons on the role in the

19 offense, and I guess really the question should be asked of the

20 government.  They -- you indicate role in the offense

21 enhancement, quote unquote.  You just meant the role in the

22 offense language in your position paper, because there's no

23 enhancement in the presentence report?  I think this is Page 1

24 of the position paper?

25         MR. COMSTOCK:  Well, yes, Your Honor.  And --

1          THE COURT:  I'm interpreting this all, I'm

2  interpreting it correctly?

3          MR. COMSTOCK:  Yes.  There was no enhancement,

4  although he certainly did, as the record is, as the court may

5  recall, recruit individuals to kill the informant, so one could

6  have been enhanced for that conduct.  The probation office

7  didn't seek to do that, but he could have been enhanced for

8  recruiting individuals.  Instead he was just merely given the

9  obstruction enhancement and not given the additional role

10  enhancement, because as you may recall the evidence, he

11  recruited individuals and was going to pay them off with

12  marihuana supplied by a co-conspirator that was a family member

13  of his.  So in that sense we have proven he had a role in this

14  offense.

15          THE COURT:  All right.  So for the same reasons that I

16  stated with respect to the offense conduct, I understand defense

17  is simply trying to preserve its objection, but the jury made

18  its finding, I found no basis to overturn the jury's finding.

19  They listened to the evidence.  That's why we have juries, and

20  they made determination.  And so I don't find that defendant has

21  articulated reasons why the facts contained in the presentence

22  report with respect to the role in the offense section

23  description are untrue or inaccurate.

24          And then we come to the obstruction of justice issue.

25  There, as Mr. Comstock points out, the defendant was given a

1  two-level enhancement under the guidelines for obstruction of

2  justice because the evidence presented and the evidence in the

3  presentence report reflects that there was evidence that the

4  defendant attempted to tamper with a witness by soliciting

5  others to harm or kill the government's confidential informant

6  witness, Ms. Oliva.  And that testimony came in at trial from

7  various witnesses.

8          Counsel, look at Paragraph 15 also of this presentence

9  report.  The end of the first full sentence.

10          Mr. Kimball, I really have kind of gone back and forth

11  about this.  I don't know what is known about what's here and

12  I'm sensitive to the ramifications of this assertion.

13          MR. KIMBALL:  Would you like us to approach, Judge?

14          THE COURT:  Well, certainly you -- yeah, I think we

15  ought to be careful about it.

16          MR. KIMBALL:  I mean, it is --

17          THE COURT:  Talk to your client about whether he has

18  any objection to you approaching first.

19          (Counsel and defendant conferred.)

20          MR. KIMBALL:  Judge, Mr. Guess is fine with me

21  approaching the bench.

22          THE COURT:  All right.  Mr. Guess, is that the case?

23          THE DEFENDANT:  (Nodded head.)

24          THE COURT:  You just need to say yes or no.

25          THE DEFENDANT:  Yes.

```
 1              THE COURT:  Okay.

 2              (At sidebar as follows:)

 3              THE COURT:  Mr. Comstock, did you plan that earlier

 4   response?

 5              MR. COMSTOCK:  I didn't mention anything about this

 6   issue.

 7              THE COURT:  Well --

 8              MR. COMSTOCK:  That issue wasn't mentioned in what I

 9   just said.

10              THE COURT:  Yes, that's true.

11              MR. COMSTOCK:  It wasn't mentioned, so...

12              THE COURT:  No, no, that's, that's fine.  That's fine.

13              MR. COMSTOCK:  I mean, the issue was -- the issue was

14   whether or not he should have gotten the role enhancement.

15              THE COURT:  Right.  I agree.

16              MR. COMSTOCK:  And the court --

17              THE COURT:  The question here -- let me stop you.

18              MR. COMSTOCK:  The court --

19              THE COURT:  I'm not -- don't take anything from what I

20   said.

21              MR. COMSTOCK:  No.  No.  I'm not.  But I'm saying the

22   court can, under 21 United States Code § 850, which is the

23   applicable section which parallels 18 United States Code § 3661

24   which says there's no limits on what a court can consider when

25   it fashions an appropriate sentence, can look at that, even
```

1 | though a role enhancement was not applied, it can factor that in

2 | its advisatory imposition of a sentence.  That's where I was

3 | going.

4 | THE COURT:  I can reach the, I can reach the

5 | enhancement even without the information about the wife.

6 | There's a more sensitive issue.  What I'm alluding to is, I feel

7 | compelled to mention it here in open court, and I've thought

8 | about this, and the reason -- I mean, I understand it could

9 | affect the relationship.  I don't know the degree to which she

10 | already knows about it.  I understand it's just, you know, a

11 | statement from someone.  But the others are just statements from

12 | people too.  Other inmates.  But I don't know why it was made.

13 | I don't know all the circumstances surrounding why it was made,

14 | and therefore an abundance of caution, it seems to me, dictates

15 | that I say something about it --

16 | MR. COMSTOCK:  Well...

17 | THE COURT:  -- right?  I want to be careful about

18 | this.

19 | MR. KIMBALL:  Sure.

20 | MR. COMSTOCK:  Here is the context to it.  A witness

21 | of -- Mr. Kimball put on the stand that particular person.

22 | Mr. Guess was actually involved in a, let's say a romantic

23 | relationship with that witness's spouse.

24 | MR. KIMBALL:  That's correct.

25 | MR. COMSTOCK:  So that was another relationship going

1   on here.  And whether or not that fit into that construct --

2   none of that came out at trial --

3          THE COURT:  Why would the fact Mr. Guess was involved

4   with another woman cause him to want to kill -- well, I mean, I

5   can understand that it could in some circumstances, but...

6          MR. COMSTOCK:  Well, I...

7          THE COURT:  You think that could be the genesis of

8   some of that as a possibility?

9          MR. COMSTOCK:  Stranger things have occurred.

10         THE COURT:  Mr. Kimball?

11         MR. KIMBALL:  Judge --

12         THE COURT:  Mister -- my question then was similar to

13  your response to my last question, I suppose.  But I understand

14  why it might make a person do that.  But at this point we don't

15  know, and that's why I am dealing with this.

16         MR. KIMBALL:  And Judge, quite candidly I don't know

17  if she knows about that or not.  She did know about the

18  relationship my client was having with another woman.  I

19  haven't, obviously, disclosed this in the presentence report.

20         THE COURT:  Is this the wife of the guy that was

21  driving the truck?

22         MR. COMSTOCK:  Supposedly driving the truck that drove

23  them to that scene.

24         THE COURT:  Okay.

25         MR. KIMBALL:  So I don't know if she's talked to my

1  client specifically about what's in here, but I've talked to my

2  client.  He denies it, obviously.  So maybe they have talked

3  about it.  So he's okay with it.

4          THE COURT:  I'll try to be careful about how I raise

5  it, but I feel compelled to, because God forbid something

6  happened after this and I didn't address it.

7          MR. KIMBALL:  Understand, Judge.

8          (Sidebar concluded and proceedings resumed as

9  follows:)

10          THE COURT:  We heard testimony at trial from various

11  people, others housed with Mr. Guess at the jail, about efforts

12  to solicit them to kill Ms. Oliva.  So when we talk about the

13  obstruction, that's whether that would have been an intent to

14  obstruct justice by interfering with the prosecution of the

15  case.  There's also in Paragraph 15 a reference to another

16  inmate who has said that, in the context of all of these -- now,

17  this was not one of those that testified, was it Mr. Comstock?

18          MR. COMSTOCK:  CW-5.  No, he did testify, Your Honor.

19          THE COURT:  But he didn't testify --

20          MR. COMSTOCK:  But the subject matter of the testimony

21  wasn't related to the issue the court's about to address.

22          THE COURT:  So this CW-5 corresponds to one of the

23  witnesses?

24          MR. COMSTOCK:  Yes, Your Honor.  As you may recall,

25  there was an issue over inextricably intertwined evidence, and

1    you followed the Kennedy decision and allowed time prior to the

2    charged time frame in the indictment, you allowed us to go back

3    a year and talk about prior drug transactions that had occurred

4    in that truck.  And this was that witness.

5              THE COURT:  Okay.  The statement that we have here I

6    also, I note it because I think an abundance of caution requires

7    that it be noted, but this person also stated that while

8    Mr. Guess was detained at the Western Tidewater Regional Jail

9    this person solicited not only to have the federal witness

10   killed, presumably Ms. Oliva, but also Mr. Guess's wife.  And so

11   the court has all of this information here in the presentence

12   report.

13             The government has to carry its burden of proving

14   facts constituting obstruction by a preponderance of the

15   evidence.  In <u>United States v. Self</u> at 132 F.3d 1039, a 1997

16   decision of the Court of Appeals, defendant' was arrested and

17   being held in a detention center, and while there, "Self

18   attempted to solicit another inmate, Charles Parker, who was due

19   to be released soon thereafter, to murder the Coleman sisters in

20   return for $5,000 so that they would not be able to testify."

21             So the presentence report in that case recommended a

22   two-level enhancement for obstruction of justice based upon this

23   attempt, and the district court did find that he had attempted

24   to obstruct justice by trying to hire somebody to kill the

25   witnesses.  The Fourth Circuit concluded that the district court

```
 1  did not commit error in making that finding.
 2          Here, of course, we have the evidence that was
 3  presented at trial of these attempts to solicit the murder of
 4  Ms. Oliva, and the court does find by at least a preponderance
 5  of the evidence that Mr. Guess attempted to arrange for a fellow
 6  prisoner to murder Ms. Oliva, and therefore the two-level
 7  enhancement for obstruction of justice seems appropriate, and is
 8  appropriate, I believe, and I make that finding and overrule the
 9  objection on obstruction of justice grounds.
10          Did you all have anything else that you had wanted to
11  point out on that?  I read all the objections and I've made my
12  ruling, but if you have anything else that you want to --
13          MR. KIMBALL:  Judge, it may just be for record
14  purposes.  With respect to that obstruction of justice
15  enhancement, certainly we did have some trial testimony
16  presented by the government about those allegations that my
17  client supposedly engaged in while incarcerated out in Suffolk,
18  but I would note that the jury certainly could have rejected
19  that evidence, Your Honor, and still found Mr. Guess guilty of
20  every single one of those charges.  So I think it puts it in a
21  different context, somewhat.
22          THE COURT:  But what did you have contrary to it?
23          MR. KIMBALL:  I did not present any evidence related
24  to that, Judge.
25          THE COURT:  That's why I don't know -- I mean, I agree
```

1   with you.  The jury certainly could have disregarded the

2   evidence, not believed it, and found him guilty.  But it was

3   testimony.

4          MR. KIMBALL:  There was testimony, Judge, and

5   obviously those --

6          THE COURT:  If you're arguing that it was completely,

7   all of it was completely incredible, I don't find that.  Just to

8   be clear.  I don't find it was completely incredible.  But I'm

9   sorry, I'm happy to hear whatever else --

10          MR. KIMBALL:  No, Judge.  I was just going to say

11  obviously each of those witnesses had their own agenda, their

12  own biases, their own reasons to testify, all of which I pointed

13  out to the jury.  So I don't know.  But really we're left with

14  the credibility determination regarding enhancement.

15          THE COURT:  That is true.  I would have to find those

16  witnesses to lack credibility.  And while, as you point out,

17  they all had their own motives, potentially, I found -- I don't

18  recall anything factually that caused me to really question

19  their testimony and I don't recall anything that I saw and I

20  observed that would cause me to question their testimony.  Just

21  like the instruction that we give to the jury that any time you

22  have testimony from a felon, you look at that testimony

23  carefully and you view it with greater care than you might view

24  other witnesses' testimony.  I did that.  And I'm sure the jury

25  did that.  But I don't find it inherently incredible.  I viewed

34

1  it with specific, special care.  And there was no other

2  contradictory testimony.  So I find that the standard has been

3  met.

4         That leaves us with the last of your objections, I

5  think, Mr. Kimball, on 7 and 8; is that right?

6         MR. KIMBALL:  Yes, Judge, that's right.

7         THE COURT:  I'm happy to hear from you if you have

8  additional comment on that.  If you don't, that's fine.

9         MR. KIMBALL:  Judge, just very briefly.  And I don't

10 want to repeat what I've already put forth in writing, but I

11 think this is somewhat of a tough issue for the defense.  I

12 recognize, Your Honor, and I certainly am aware of the Kahn

13 case, the Luskin case that the government has cited and

14 obviously is relying upon.  As far as distinguishing those two

15 cases, Judge, from Mr. Guess's, Your Honor, basically I would

16 just tell the court or try to distinguish our case from those

17 cases in the sense that in Mr. Guess's case, we really had not

18 only simultaneous possession of the two handguns, one being

19 actual, one being constructive, but we also had simultaneous

20 possession of the drugs underlying each of those 924(c) counts.

21 The fact patterns of both the Kahn and Luskin, Judge, basically

22 involved distinct uses and carrying of the firearms with

23 similarly distinct underlying criminal acts.  Neither one of

24 those cases really dealt with, Judge, constructive possession or

25 simultaneous possession.  So I think in this case, Judge, the

Timothy Guess 76904-083
Federal Corrections Complex Low
P. O. Box 1000
Petersburg, VA. 23804

||||||||||||||||||||||||||||||||||||||||||||||||||||||

" LEGAL MAIL "

⇨76904-083⇨
Us Court Of App
1100 East Main
Richmond, VA 2
United States



RECEIVED
U.S. MARSHALS

eals
Street, 5th Floor
3219



RECEIVED
JAN 13 2026

⇨76904·083·⇨

Us Court Of Appeals
1100 East Main Street, 5th Floor
Richmond, VA 23219
United States

FCC PETERSBURG
P.O. BOX 90026
PETERSBURG, VA 23804

The enclosed letter was processed through special mailing procedures for forwarding to you the letter has neither been opened nor inspected. If the writer raises a question or problem over which this facility has jurisdiction you may wish to return the material for further information or clarification. If the writer encloses correspondence for forwarding to another addressee please return the enclosure to the above address

